IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-11-174-PHX-DGC (LOA) |
| Plaintiff/Respondent, | CR-05-870-PHX-DGC |
| vs. | **REPORT AND RECOMMENDATION** |
| Jeffrey A. Kilbride, | |
| Defendant/Movant. | |

This matter is before the Court on Movant's Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 5) The Government has filed a response[1] to which Movant has replied. (Docs. 13, 14) Accordingly, this matter is ripe for review. For the reasons set forth below, the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 should be denied.

**I. Procedural History**

On August 5, 2005, Movant and several co-defendants were indicted in the United States District of Court, District of Arizona, on numerous counts pertaining to the electronic

---

[1] Although the Response, doc. 13, includes numerous references to material that can be found in the criminal record, it rarely cites to specific docket entries. For example, the Government's Response describes the events pertaining to Movant's alleged obstruction of justice without a single citation to the record, *see* doc. 13 at 6-8. The Government's extremely limited citation to supporting documentation has hampered and made more difficult the Court's review of this § 2255 motion. The Court expects, and will order, more specific citations to the record in future filings.

transmission of obscene images. (CR doc. 1[2]) Movant's case proceeded to a jury trial. On June 25, 2007, Movant was convicted of one count of conspiring to commit fraud in connection with electronic mail in violation of 18 U.S.C. § 371 (Count 1); two counts of committing fraud in connection with electronic mail in violation of 18 U.S.C. §§ 1037(a)(3) and (a)(4) (Counts 2 and 3), two counts of importation or transportation of obscene material in violation of 18 U.S.C. § 1462 (Counts 4 and 5), two counts of transportation of obscene material for sale or distribution in violation of 18 U.S.C. § 1465 (Counts 6 and 7), and one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 8). (CR docs. 1, 296)

On August 24, 2007, the Court denied Movant's motion for judgment of acquittal or, alternatively, for a new trial. (CR doc. 334); *United States v. Kilbride*, 507 F.Supp.2d 1051,1069 (D.Ariz. 2007). After conducting a sentencing hearing, the Honorable David G. Campbell sentenced Movant to 78 months imprisonment followed by a three-year term of supervised release. This sentence included a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1.  (CR docs. 353, 358, 359)

Movant's convictions and sentences were based on the following activities. In 2003, Movant and co-defendant, James Schaffer, (collectively referred to as "Defendants") began "sending large volumes of unsolicited commercial emails, commonly referred to as 'spam,'" to advertise pornography websites using as server in Phoenix, Arizona. *Kilbride*, 507 F.Supp.2d at 1055. Defendants commissioned and utilized a software program that enabled them to design the content of an e-mail and then send that message in an e-mail to millions of e-mail addresses in a single campaign. *Id.*  When recipients opened Defendants' spam e-mails, pornographic images were automatically displayed. Defendants received a commission when recipients clicked on the links in the spam e-mails and spent money at the advertised websites. *Id.*; *United States v. Kilbride*, 584 F.3d 1240, 1244-45 (9th Cir. 2009).

After their business was established, Defendants became aware of pending legis-

---

[2] Citations to "CR doc. __" are to the docket in CR-05-870-PHX-DGC.

lation, including the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq*. ("Can-Spam Act"), that would make their business a criminal enterprise by prohibiting, among other things, "sending bulk commercial emails that contain materially false header information." *Kilbride*, 507 F.Supp.2d at 1055. Defendants moved their e-mail operation overseas by logging on remotely to servers they set up at a co-location facility in Amsterdam to send their pornographic, spam e-mail advertisements ("porn spam"). *Id*. at 1058-59. Defendants established an overseas business structure that consisted of a shell corporation, Ganymede Marketing, Ltd. ("Ganymede"), which was owned by a trust, which in turn had two beneficiaries in the form of two more trusts held for Defendants' benefit. *Id*. at 1059-60. Defendants established the structure in Mauritius, an island off the coast of Madagascar, because of its favorable tax scheme and absence of e-commerce laws. Defendants arranged for the positions of officers and directors of Ganymede to be held by Laval Law, a Mauritian citizen, and Christopher Compton, a United Kingdom citizen residing in the Isle of Man. *Id.* at 1060. Defendants, however, controlled Ganymede and the trusts, and Law and Compton acted at Defendants' direction. *Id.* at 1055-56, 1058-64.

      Co-conspirator Kirk Rogers testified that in 2003, he sent e-mails to a list of approximately 17 million addresses, that grew to 35 million addresses by the end of Rogers' involvement. *Id.* at 1062. Co-conspirator Jennifer Clason testified that "from the moment [she] woke up until the moment [she] went to bed," or approximately 14 hours per day, she would send Defendants' porn spam via five or six electronic bulk e-mail campaigns, simultaneously advertising two different websites - for a total of 10 or 12 bulk porn spam e-mails sent to the people on the e-mail list every day. Clason testified that she used vague phrases in the subject lines of Defendants' porn spam e-mails including statements, such as, "hi," and "hey you." *Id*. at 1063. Although the e-mails contained an opt-out link, recipients who opted out were returned to Defendants' mailing lists 30 days after opting out and, thus, continued receiving Defendants' porn spam e-mails. *Id.* at 1062. Images in Defendants' bulk porn spam e-mails included close-up images of sexual acts to advertise two websites. These

- 3 -

images formed the basis for Defendants' obscenity charges. Clason explained that Schaffer directed her to use these images in e-mails and estimated she sent bulk e-mail campaigns containing the two images approximately 40 times a day. *Id.* at 1062-63.

Eight citizens, who received Defendants' porn spam and complained to either AOL or the Federal Trade Commission ("FTC"), testified as witnesses at trial regarding the context in which the e-mails were received and their ensuing complaints. Some of these individuals testified they complained about all types of spam, while others said it was the hardcore and unsolicited nature of the images in Defendants' e-mails that prompted them to complain. Over 670,000 complaints made in 2004 about Defendants' porn spam were introduced into evidence at trial; 662,934 complaints to AOL and 8,272 complaints to the FTC. *Id.* at 1064. Some who complained to the FTC wrote messages, asking the FTC to stop Defendants' unsolicited, unwanted, "disgusting," "foul," porn spam messages, which had been received "from 10 to 15 [times] per day." *Id.*

### B.  Laval Law and Injunction in Mauritius

In a May 9, 2007 letter, sent *via* facsimile, the Government advised Laval Law that it had determined that his testimony regarding his business relationship with Movant "would be of significant assistance to the United States in its case in chief," against Movant and co-defendant Schaffer. (CR doc. 259-1 at 38)  The Government requested that Law or his attorney contact the Government by May 15, 2007. (*Id.*)  On May 11, 2007, Law responded that he was willing to assist the Government in its case against Movant. (CR doc. 259-1 at 39-41)  However, Law stated that the laws of Mauritius limited his ability to discuss the trust he had helped Defendants establish in Mauritius absent a court order. (*Id.*)  In a May 12, 2007 faxed letter, the Government responded that it understood and accepted that limitation, but still wanted to talk with Law regarding Ganymede. (CR doc. 259-1 at 42)  In a May 25, 2007 letter, Law, through local Phoenix counsel Larry Palles, agreed to cooperate with the Government in exchange for immunity from prosecution. (CR doc. 259-1 at 43-45)

The Government states that it provided the May 12, 2007 letter to Defendants in discovery on May 18, 2007. Law was also listed as a witness on the Government's witness

list, filed on May 30, 2007. (CR doc. 235)  On May 26, 2007, Movant appointed Mauritius attorney Ayesha Jeewa to act as his "agent and proxy to enter and/or defense any matter before any court or tribunal in the Republic of Mauritius." (CR doc. 259-1 at 14)  On June 8, 2007, three days after trial started, Movant's Mauritian counsel sought and obtained an *ex parte* temporary injunction from the Supreme Court of Mauritius prohibiting Law from, *inter alia*, "disclosing, communicating and testifying on the affairs of (a) the LBFM Ventures Trust; (b) the Lightspeed Holdings Trust; (c) the PJ Investment Group Trust; (d) Ganymede Marketing; and (e) the beneficiaries thereof . . under the laws of Mauritius."  (CR doc. 259-1 at 1-3)  Movant attached the correspondence between the Government and Law to his Mauritian filing. (CR doc. 259, Exh. 1)

According to the affidavit signed by Movant's Mauritian attorney and filed with the Supreme Court of Mauritius, "the agreement of [Law] to testify is in fact a violation of the laws of Mauritius and same will cause [Movant] irreparable and immeasurable damage which will never be compensated pecuniarily." (CR doc. 259-1 at 12)  In granting Movant's request for an injunction, the Honorable S.B. Domah of the Supreme Court of Mauritius ordered Law "to appear before the Honorable Judge sitting in Chambers [on Monday the 11th day of June 2007 at 9:30 a.m.] to show cause why the interim order should not be made interlocutory or discharged after hearing the parties." (CR doc. 259-1 at 1)

After receiving notice of the injunction, Law, who had agreed to accept service of a subpoena to testify at Movant's trial, appointed Mauritian counsel to act on his behalf there and traveled to the United States as previously planned. Law arrived in Phoenix on June 10, 2007 and was scheduled to testify on Wednesday, June 13, 2007.  Law informed the Government that he feared being held in contempt in Mauritius if he continued cooperating. On June 11, 2007, another party to the injunction and Movant's defense counsel agreed to a continuance of the hearing on Movant's Mauritius action until June 25, 2007, which effectively left the injunction in place for the duration of Movant's trial in this case.

On June 11, 2007, based on the Mauritian injunction and Law's concern about cooperating with the Government, the Government moved for a protective order, clarifying

- 5 -

that Law's testimony would be limited to subjects he could legally discuss under Mauritian law. (CR doc. 259) On the following day, the Court held a hearing on the motion. (CR doc. 261) During the hearing, evidence was presented that Movant's counsel in Mauritius, Ms. Jeewa, contacted Law, who was represented by counsel, directly and discouraged him from testifying in Movant's trial. The Government asserted that the Mauritian injunction was not obtained lawfully because Kilbride lacked standing to assert rights regarding Ganymede, a defunct corporation in 2005, which Kilbride did not own and was neither an officer nor an employee thereof. Movant's conduct in obtaining the injunction exposed Law to the risk of contempt in Mauritius if he testified and in the United States if he did not testify. In response, Movant agreed to contact his Mauritian counsel and request she seek a modification of the injunction in the Mauritian Supreme Court so that it would not apply to Law. Law's local counsel, Mr. Palles, and the Government advised the Court that such a result would be satisfactory. (CR Doc. 272)

The following day, Law's local counsel requested another hearing regarding the Mauritian injunction. Mr. Pelles argued that, contrary to Movant's representation that he would file a document in the Supreme Court of Mauritius stipulating to lifting the Mauritius injunction against Law, Movant's Mauritian counsel filed a letter, suggesting that the District Court had coerced Movant into withdrawing the injunction with respect to Law. (CR doc. 264 at 2; CR doc. 272 at 3-7) The Court took the matter under advisement to consider the Government's request that it exempt Law from testifying and give a spoilation instruction to the jury if the injunction remained in place. (CR doc. 272) On June 14, 2007, Movant's Mauritian counsel was successful in lifting the injunction against Law, which allowed Law to meet with Government counsel and testify at Movant's trial pursuant to his agreement to do so. (CR doc. 265); *Kilbride*, 584 F.3d at 1261-62.

**C. Direct Appeal**

Movant appealed his convictions and sentences to the Ninth Circuit Court of Appeals, raising several grounds for relief including: (1) the Court erred in instructing the jury regarding the definition of "obscene" too narrowly defined the "contemporary

community standards," which allowed the jury to determine the physical boundaries of the relevant geographical community and did not require the jury to apply the standards of a "national community"; (2) his conviction for conspiracy to commit money laundering (Count 8) should be vacated because of the lack of a predicate-offense felony conviction; and (3) the Court erred in applying a sentencing enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. The Ninth Circuit affirmed Movant's convictions and remanded for the correction of a clerical error in the written judgment regarding the classification of the convictions on Counts 1, 2, and 3. (CR doc. 532); *Kilbride*, 584 F.3d at 1240

With respect to Movant's claim that the jury should have been instructed to consider whether the e-mails were obscene under a national community standard, the appellate court agreed that the district court should have instructed the jury to apply a "national community" standard based on the holding of the Supreme Court in *Ashcroft v. ACLU*, 535 U.S. 564 (2002). The appellate court, however, found that the error, which was not raised at trial, was "far from plain," and thus not reversible. *Kilbride*, 584 F.3d at 1251, 1255. With respect to Movant's challenge to the money laundering conspiracy convictions, the court agreed that the jury instructions created "serious ambiguity" as to what findings of predicate criminal activity were required to support a conviction. *Id*. at 1261. However, the court found that this error had no impact on the proceedings because the evidence at trial showed beyond a reasonable doubt that Movant committed felony-level violations of 18 U.S.C. § 1037. *Id*. Thus, the error did not require reversal. In response to Movant's obstruction-of-justice sentencing enhancement, the Ninth Circuit held that the district court did not err, as the "undisputed factual findings of the district court with regard to the timing of Kilbride's Mauritius lawsuit" fully supported the application of the obstruction-of-justice enhancement. *Id*. at 1262.

Thereafter, Movant filed a timely Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, raising three grounds for relief, all based on ineffective assistance of trial counsel. The Government has responded in opposition to the Amended § 2255 Motion, and Movant has replied. For the reasons set forth below, Movant's

§ 2255 Amended Motion should be denied.

## II. Analysis

### A. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Movant must establish that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984)). To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690. When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). The standard for judging counsel's representation is a most deferential one. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter,* ___ U.S.___, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 690).

To establish a Sixth Amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the out-come of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

"'Surmounting *Strickland's* high bar is never an easy task.'" *Richter*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S.Ct. 1473,1485 (2010)). As discussed below, Movant's claims of ineffective assistance of counsel fail.

**B. Ineffective Assistance of Counsel - Obscenity Jury Instructions**

In Ground One, Movant argues that trial counsel was ineffective for failing to propose an instruction that would have advised the jury that obscenity distributed *via* e-mail must be considered according to a national community standard. (Doc. 5 at 5, Doc. 6 at 6)

Before trial, the Court heard argument regarding the proposed jury instructions pertaining to obscenity. (CR doc. 427) The Court instructed the jury, in relevant part, that:

> To prove an image is obscene, the government must satisfy a three-part test;
>
> One, that the average person, applying contemporary community standards, would find that the image as a whole appeals primarily to prurient interests;
>
> Two, that it depicts or describes sexual conduct in a patently offensive way;
>
> And, three, that the image taken as a whole lacks serious literary, artistic, political or scientific value.
>
> To appeal to a prurient interest is an appeal to a morbid, degrading, and unhealthy interest in sex, as distinguished from a mere candid interest in sex. The first test for obscenity, therefore, is whether the predominant theme or purpose of the image, when viewed as a whole, is to appeal to the prurient interest of an average person in the community.
>
> The second test is whether the image depicts or describes sexual conduct in a patently offensive way. The Supreme Court of the United States has given the following examples of materials which satisfy this requirement: Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of genitals.
>
> These first two tests are to be decided applying *contemporary community standards*. This means that you should make the decision in light of contemporary standards that would be applied by the average adult in the community, with an average and normal attitude and interest in sex.
>
> *Contemporary community standards* are set by what is in fact accepted in the community as a whole; that is to say, by society at large or people in general, not merely by what the community tolerates nor by what some persons or groups of persons believe the community as a whole ought to accept or refuse to accept.
>
> This decision should . . . not be based on your personal beliefs or opinions, but on the standards accepted by the community as a whole.

- 9 -

> \* \* \*
>
> *The community you should consider in deciding these questions is not defined by a precise geographic area. You may consider evidence of standards existing in places outside this particular district.*
>
> The parties have presented evidence concerning contemporary community standards. You may consider the evidence presented but you may also consider your own experience and judgment in determining contemporary community standards.

(CR doc. 461 at 31-34) (emphasis added).

Movant challenged this jury instruction on direct appeal on the ground that, "obscenity disseminated *via* email must be defined according to a national community standard" because there is "no means to control where geographically their messages will be received." *Kilbride*, 584 F.3d at 1250-51. The Ninth Circuit found that the court should have instructed the jury to apply a "national community" standard based on the "fractured" holding of the Supreme Court in *Ashcroft v. ACLU*, 535 U.S. 564 (2002), which "most directly addressed" Movant's argument. *Id*. at 1252. However, the Ninth Circuit found that the error, which was not raised at trial, was "far from plain, and thus not reversible. *Id*. at 1251,1255. Movant now argues that, because the Ninth Circuit found that the court should have instructed the jury to apply a national community standard, trial counsel was ineffective for failing to request such an instruction. Movant's argument relies heavily on hindsight as it is based on the Ninth Circuit's analysis which, of course, was not available until after Movant's trial. The relevant inquiry under *Strickland*, however, "is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (internal citations omitted); *see also Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998) (stating that "[t]he relevant inquiry under *Strickland* is not what defense counsel could have pursued, but whether the choices made by defense counsel were reasonable.").

The Supreme Court decision upon which the Ninth Circuit relied addressed the constitutionality of the Child Online Privacy Act ("COPA"), a successor law to the Communications Decency Act, which regulated material "harmful to minors," transmitted

- 10 -

*via* the World Wide Web, "for commercial purposes." *Ashcroft v. ACLU*, 535 U.S. 564, 569 (2002). The COPA identified materials harmful to minors using a test that relied on contemporary community standards. The Supreme Court held "COPA's reliance on community standards . . . does not *by itself* render the statute substantially overbroad for purposes of the First Amendment." *Id.*, at 585 (emphasis in original). The Supreme Court's decision, however, was fractured and did not include an "explicit holding as to the appropriate geographic definition of contemporary community standards to be applied" in a case like Movant's, where obscenity is distributed *via* e-mail. *Kilbride*, 584 F.3d at 1253. On direct review in this case, the Ninth Circuit, after engaging in a detailed discussion of the Justices' varied concurring opinions in *Ashcroft*, held that "a national community standard must be applied in regulating obscene speech on the Internet, including obscenity disseminated via email." *Id.* at 1254. The appellate court held that the district court's error for failing to instruct the jury to apply a national community standard was "far from plain" and noted that, prior to its holding, "the relevant law in this area was highly unsettled with the extremely fractured opinion in *Ashcroft* providing the best guidance. While our holding today follows directly from a distillation of the various opinions in *Ashcroft*, our conclusion was far from clear and obvious to the district court." *Kilbride*, 584 F.3d at 1255.

Here, Movant agrees that the Ninth Circuit's decision was "distilled" from a fractured Supreme Court's reasoning in *Ashcroft*, finding agreement on the national community standard from various concurring Justices and one Justice's dissent. (Doc. 6 at 7-8) In view of the unsettled nature of the law surrounding the relevant geographical community for determining whether materials disseminated *via* e-mail were obscene at the time of Movant's trial, defense counsel's performance was not deficient. *See U.S. v. Marshall*, 6 Fed.Appx. 626, 627 (9th Cir. 2001) (finding that "[t]he law regarding the definition of "knowingly" was unsettled at the time of [defendant's] trial . . . and thus, the district court correctly determined that [defense] counsel was not ineffective for failing to object to the district court's jury instructions."). Defense counsel's failure to request a "national community standard" jury instruction was not objectively unreasonable where the

- 11 -

1 law was unclear at the time of Movant's trial, and on direct review, the appellate court stated
2 that its holding resulted from a distillation of an "extremely fractured" opinion, a conclusion
3 that was "far from clear and obvious." *Id*.

4 Moreover, even if defense counsel performed deficiently by failing to propose a
5 "national community standard" jury instruction, Movant has not established prejudice.
6 Movant must establish, "a reasonable probability that, but for counsel's unprofessional
7 errors, the result of the proceeding would have been different. A reasonable probability is a
8 probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.
9 Here, as Movant recognizes, the district court did not limit defense counsel to presenting
10 arguments or evidence regarding the community standards of a precise geographical area.
11 Indeed, as Movant states, "defense [counsel] argued during closings that the jury should
12 adopt an 'expansive' view of the relevant community and consider . . . materials available on
13 'the entire worldwide web.'" (Doc. 6 at 9)  The jury was presented with overwhelming
14 evidence that the images at issue were obscene, under either a national community standard
15 or a standard limited to Arizona. In addition to sending e-mails that included sexually-
16 graphic content, the e-mails containing those images were unsolicited and sent numerous
17 times a day. *Kilbride*, 507 F.Supp.2d at 1068, 1070.  The jury was instructed that it could
18 consider the unsolicited nature of the e-mails in determining whether the content was
19 obscene.  (CR doc. 461 at 34) (instructing that the jury, in determining whether the charged
20 materials were obscene, it could "consider the setting, or context, in which the materials
21 were presented," including "the manner of distribution, and the circumstances of production,
22 sale, and advertising.")  Movant has not shown that he was prejudiced by counsel's failure to
23 request a jury instruction on a national community standard, he has not shown that, but for
24 counsel's failure to request such an instruction, there is a "reasonable probability that the
25 result of the proceeding would have been different."  *Strickland*, 466 U.S. at 687.

26 Movant also argues that any error in the jury instructions was constitutional error,
27 requiring reversal, unless the error is found harmless beyond a reasonable doubt. (Doc. 6 at
28 6) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). The *Chapman* standard does not

apply to cases, such as this one, on collateral review. Rather, on collateral review, the court assesses the prejudicial impact of most constitutional errors by determining whether they "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Regardless, the *Brecht* standard does not come into play unless the Court finds a constitutional error, which the undersigned has not found in this case. Moreover, where a habeas petitioner alleges ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard applies and courts do not engage in a separate analysis applying the *Brecht* standard. *Avila v. Galaza*, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); *Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009).

**B. Conspiracy to Commit Money Laundering Jury Instruction**

*In Ground Two, Movant alleges that trial counsel was ineffective for failing to* object to jury instruction Number 46 on what constitutes conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i). (Docs. 5 at 6; 6 at 10)  The district court's Jury Instruction Number 46 on what constitutes a violation of § 1956(a)(2)(B)(i) provided, in pertinent part, that:

> The person knows that the money represents the proceeds of some form of unlawful activity, in this case, the a [sic] violation of 18 U.S.C. § 1037(a)(3) or § 1037(a)(4) as set forth in Counts Two and Three of the Indictment[.]
>
> * * *
>
> To know that money involved in a financial transaction represents the proceeds of some form of unlawful activity, the person must know that the money represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law.

(CR doc. 330 at 48)

On direct appeal, Movant challenged his conviction "under 18 U.S.C. § 1956(h) for conspiracy to commit money laundering, asserting instructional error." *Kilbride*, 584 F.3d at 1260. Because Movant did not challenge the § 1956 jury instruction at trial, the

- 13 -

appellate court reviewed for plain error. *Id*. On direct appeal, the court noted that, "[t]hough Count 8 of the Indictment charged the Defendants with conspiring to commit four different money laundering offenses, the jury was instructed that Defendants allegedly conspired to commit only one violation of 18 U.S.C. § 1956(a)(2)(B)(I)." *Id*. The Ninth Circuit found that the jury was not adequately instructed on the requirements for finding a felony-level violation of 18 U.S.C. § 1037, which was the predicate unlawful activity for the money laundering conspiracy charge. *Id.,* at 1261. However, the appellate court concluded that the error was not "plain" and did not require reversal, because "it did not seriously affect the fairness, integrity or public reputation of the proceedings." *Id*.

Movant has not shown that defense counsel's failure to identify the ambiguity in jury instruction Number 46 was objectively unreasonable. Counts 2 and 3 of the Indictment specifically alleged the facts necessary to prove felony violations of 18 U.S.C. §§ 1037(a)(3) and (a)(4). Jury instruction Number 47, referring to instruction Number 22, clarified that the Government was not required to prove that an overt act occurred to convict Movant under Count 8. (*see* CR doc. 330 at 23, 49) ("The government is not required to prove that the defendant personally did one of the overt acts.") The jury received a copy of the Indictment for review during deliberations, and the jury heard Clason and Ellifson testify that they pled guilty to felony CAN-SPAM violations.

Even assuming counsel's performance was deficient, Movant has not shown prejudice necessary to satisfy the *Strickland* standard. Movant argues that the result of his direct appeal would have been different had defense counsel objected at trial to jury instruction Number 46 because the issue could have been properly raised on direct appeal. (Doc. 5 at 6) Movant's argument is based on the premise that, if trial counsel had objected to jury instruction Number 46 as ambiguous, the Court would have overruled that objection and given the same jury instructions. Then, appellate counsel could have challenged jury instruction Number 46 on direct appeal, and the appellate court would have reversed Movant's conviction. Movant's argument is clearly speculative. He provides no evidence in support of his assertion that the trial court would have taken no action had defense counsel objected to

- 14 -

jury instruction Number 46.

Moreover, in view of the overwhelming evidence presented at trial of Movant's guilt of the felony-level violation of § 1037, he has not shown that, but for counsel's deficient performance, there is a reasonable probability that the outcome of his trial would have been different. *Smith*, 140 F.3d at 1268-69 (citing *Strickland*). As the Ninth Circuit found, there was "uncontradicted testimony" showing that Movant was "transmitting emails in volumes well exceeding 250,000 in 2004." 584 F.3d at 1261.  The appellate court further found that the "evidence at trial shows beyond a reasonable doubt that Defendants committed felony-level violations of § 1037" and the instructional error "had no impact on the proceedings." *Id.* In view of the foregoing, Movant's claim of ineffective assistance based on jury instruction Number 46 fails.

**C.  Sentencing Enhancement for Obstruction of Justice**

In Ground Three, Movant asserts that trial counsel was ineffective for failing to challenge the two-level sentencing enhancement for obstruction of justice. (Doc. 5 at 7) Movant also asserts that trial counsel had a conflict of interest based on his attempts to distance himself from the lawsuit filed in Mauritius that led to the application of the obstruction-of-justice enhancement. (Doc. 6 at 15)  Movant argues that this conflict of interest resulted in ineffective assistance of counsel.

Movant relies on *Mickens v. Taylor*, 535 U.S. 162 (2002) and *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980), which recognize that, although ineffective assistance of counsel claims generally require the petitioner to show deficient representation and prejudice, the court "forgo[es] individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict" in situations "where assistance of counsel has been denied entirely or during a critical stage of the proceeding." *Mickens*, 535 U.S. at 166. Such circumstances may "arise when the defendant's attorney actively represented conflicting interests." *Id.* at 166; *see also Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

The Ninth Circuit, however, has noted that the Supreme Court's decisions in *Mickens* and *Sullivan* are limited to conflicts of interest caused by the joint representation of

- 15 -

two or more defendants, and do not apply to situations in which the attorney allegedly possesses some internal conflict of interest. *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2004) (explaining the Supreme Court in *Mickens* noted that lower courts have applied conflict-of-interest doctrine "unblinkingly to all kinds of alleged attorney ethical conflicts," but cautioning that Supreme Court law does not reach beyond joint representation.); *see also Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (holding that "*Mickens* explicitly concluded that *Sullivan* was limited to joint representation.") (internal quotations omitted).

Because Movant does not allege a conflict of interest caused by joint representation of more then one defendant, to prevail on a claim of ineffective assistance based on counsel's alleged conflict, Movant must satisfy the *Strickand* test. *See Earp*, 431 F.3d at 1138 (noting that actual conflict-of-interest exceptions to *Strickland's* requirements exist to assure vindication of the Sixth Amendment right to counsel where *Strickland* itself is "evidently inadequate," but that *Strickland* otherwise applies.); *Land v. Giurbino*, 2009 WL 313544, at * 16 (C.D.Cal. Sept. 29, 2009) (holding that petitioner's conflict-of-interest habeas claim based on the attorney's personal conflict of interest could not survive unless petitioner satisfied *Strickland*). Movant has not satisfied *Strickland's* requirements. He has not shown that defense counsel's conduct in handling the Mauritian lawsuit and injunction "fell below an objective standard of reasonableness," or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

First, Movant has not shown that counsel's performance was deficient. Movant has submitted several e-mails in support of his contention that defense counsel initiated the Mauritian injunction, and therefore, his failure to advise the court of his personal involvement constitutes ineffective assistance. (Doc. 6)  The e-mails to do not indicate whether Movant or defense counsel initiated the Mauritian injunction. They do, however, indicate that defense counsel participated in communications regarding the Mauritian injunction during the month of the trial. Although defense counsel did not specifically discuss with the court his own involvement in the Mauritian injunction, he argued against the obstruction-of-

- 16 -

justice sentence enhancement. On the fourth day of trial, June 12, 2007, the court discussed the Mauritian injunction with counsel for Movant and the Government. (CR doc. 439 at 4) During this discussion, the Government expressed its concern that the Mauritian injunction would "severely narrow" Law's testimony. (*Id.* at 4-6) The Government also stated that defense counsel had received notice on May 18, 2007 of the Government's intention to call Law to testify. (CR doc. 439 at 7)

Defense counsel responded that the injunction was not limited to Law, but also included Deutsche Bank and Inter Ocean Management Limited. (*Id.* at 8-9) Defense counsel argued that the injunction was not filed with the intent to prevent Law from testifying, CR doc. 284 at 9, but rather to ensure that Law's testimony and the records from Deutsche Bank and Inter Ocean Management Limited were not admitted in violation of the laws of Mauritius. (CR doc. 439 at 9) Defense counsel also argued that the injunction was lawfully obtained to ensure that the Government did not rely on a faulty certification of the Deutsche Bank records. (CR doc. 439 at 8-9) As for the timing of the injunction, defense counsel asserted that Movant had obtained an attorney in Mauritius "well over a year ago" to identify potential violations of Mauritian law with regard to the banking records and Mr. Law's testimony, *id.* at 10, 12, 25, but that defense counsel was unaware that Mr. Law's testimony at trial would cover matters in violation of Mauritian law until after trial commenced. (CR doc. 439 at 10-13) Defense counsel repeatedly emphasized that the injunction was not intended to impede Law's ability to testify. (*Id.* at 10, 12-13, 25)

In addition to arguing that the Mauritian injunction was lawful during trial, before sentencing defense counsel submitted a supplemental memorandum reiterating that an obstruction-of-justice enhancement should not be imposed because the Mauritian injunction was lawfully obtained from a foreign jurisdiction and was not intended to prevent Law from testifying. (CR doc. 355 at 1-3) Defense counsel also opposed the enhancement based on the lack of legal authority providing that a lawfully-issued court order could form the basis of an obstruction-of-justice enhancement, CR doc. 355 at 4, and was based on the fact that Law was not actually prevented from testifying. (CR doc. 355 at 2)

Defense counsel did not mention any personal involvement with the Mauritian injunction, however, that omission does not render his performance objectively unreasonable. *Strickland*, 466 U.S. at 689. Defense counsel acted within the range of reasonable professional assistance by submitting a memorandum to the court that included evidence and argument against the court's imposition of an obstruction-of-justice enhancement. *See United States v. Purviance*, 2010 WL 4116640, * 1 (9th Cir. Oct. 19, 2010) (unpublished) (finding that counsel was not ineffective despite defendant's claim that he failed to present the strongest available evidence to rebut a sentencing enhancement, where counsel "adequately researched the case law" and "reasonably declined to call witnesses."); *Smith v. Stewart*, 140 F.3d 1263,1269 (9th Cir. 1998) (noting that "the mere failure to present evidence at sentencing, as troubling as that may be on its face, does not result in a *per se* finding of ineffectiveness."). Despite Movant's allegation that defense counsel failed to present evidence of his personal knowledge, or alleged participation, in the Mauritian injunction and, therefore, failed to make the "best possible argument" in Movant's defense at sentencing, counsel's actions do not fall outside the "wide range of professional assistance." *Strickland*, 466 U.S. at 689. Whether the best possible argument is made is not the test for effective assistance, counsel's assistance need not be "infallible." *United States v. McAdams*, 759 F.2d 1407, 1409 (9th Cir. 1985).

Even if counsel's performance was deficient, Movant has not established that he suffered prejudice. To establish prejudice, Movant bears "the substantial burden of showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 694). Defense counsel repeatedly argued that Movant did not obstruct justice - that the Mauritian injunction was lawfully obtained to protect confidential information, not to limit Law's testimony. The Court rejected counsel's arguments, questioning how the affidavit that was filed for the Mauritian injunction could be consistent with Movant's claim that he did not know that Law would testify until a few days before trial. (CR doc. 284 at 14)

- 18 -

Movant has not shown that there is a reasonable likelihood the result of his sentencing would have been different had the court been aware of the defense counsel's alleged involvement in obtaining the Mauritian injunction. The record reflects that Movant's Mauritian counsel, whom he gave full authority to act on his behalf, obtained an injunction on behalf of a defunct corporation Movant never owned, directed, or worked for, and that an injunction against Law was obtained three days after trial started. (CR doc. 259-1 at 1-14, 34-35)  Additionally, Movant's affidavit for the injunction revealed his prior knowledge of Law's planned testimony, and that Movant's Mauritian counsel - despite knowing that Law was represented by legal counsel, contacted Law and discouraged him from coming to the United States and testifying. (CR. doc. 259-1)  Movant has not shown that there is a reasonable probability that, but for defense counsel's failure to reveal to the Court additional information about his alleged involvement in the Mauritian injunction, the result of Movant's sentencing would have been different.

**III.  Conclusion**

Based on the foregoing, Movant's § 2255 motion should be denied.

Accordingly,

**IT IS ORDERED** that the Government's counsel, Wendy Waldron or others, must provide more specific citations to the record in future filings.

**IT IS RECOMMENDED** that Movant's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, doc. 5, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this

recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 19th day of April, 2012.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge