1   **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   United States of America,                    No.  CV11-0174-PHX-DGC
                                                       CR05-0870 PHX DGC
10                          Plaintiff,
                                                  **ORDER**
11  v.

12  Jeffrey A. Kilbride,

13                    Defendant/Movant.

14

15          Jeffrey A. Kilbride moves to vacate, set aside, or correct his sentence pursuant to

16  28 U.S.C. § 2255.  Doc. 5.  On April 19, 2012, Magistrate Judge Lawrence O. Anderson

17  issued a report and recommendation ("R&R") that recommended the motion be denied.

18  Doc. 17.   Petition has filed an objection to the R&R.   Doc. 18.   For the reasons that

19  follow, the Court will accept the R&R and deny Mr. Kilbride's motion.

20  **I.      Background.**

21          On August 25, 2005, Movant and two co-defendants were indicted in the United

22  States District Court, District of Arizona, on numerous counts pertaining to the electronic

23  transmission of obscene images.   05-CR-00870-DGC, Doc. 1.   Following a jury trial,

24  Movant was convicted of one count of conspiracy to commit fraud in connection with

25  electronic mail in violation of 18 U.S.C. § 371 (Count 1), two counts of committing fraud

26  in connection with electronic mail in violation of 18 U.S.C. §§ 1037(a)(3) and (a)(4)

27  (Counts 2 and 3), two counts of importation or transportation of obscene material in

28  violation of 18 U.S.C. § 1462 (Counts 4 and 5), two counts of transportation of obscene

1    material for sale or distribution in violation of 18 U.S.C. § 1465 (Counts 6 and 7), and

2    one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 8).

3    CR Doc. 296.

4          On August 24, 2007, the Court denied Movant's motion for judgment of acquittal

5    or, in the alternative, for a new trial.  Doc. 334.  On September 24, 2007, the Court

6    sentenced Movant to 78 months imprisonment followed by three years of supervised

7    release. CR Doc. 359.  This sentence included an enhancement for obstruction of justice

8    pursuant to U.S.S.G. § 3C1.1.  CR Doc. 358, at 4.  Movant filed an appeal in the Ninth

9    Circuit raising several grounds for relief:  (1) the Court erred in instructing the jury on the

10    definition of "obscene" by too narrowly defining the phrase "contemporary community

11    standards," (2) his conviction for conspiracy to commit money laundering should be

12    vacated because of the lack of a predicate-offense felony conviction, and (3) the Court

13    erred in applying the U.S.S.G. § 3C1.1 sentencing enhancement for obstruction of justice.

14    CR Doc. 382; *see* Doc. 17.  The Ninth Circuit affirmed Movant's conviction and sentence

15    and remanded the case to this Court to correct a clerical error in the written judgment.

16    CR Docs. 532, 532-1.  The Court issued an amended judgment on March 19, 2010.

17    CR Doc. 539.

18          On January 26, 2011, Movant filed a pro se motion to vacate, set aside, or correct

19    his sentence pursuant to 28 U.S.C. § 2255.  Doc. 1.  He then filed a motion for leave to

20    file a supporting memorandum.  Doc. 3.  On February 8, 2011, the Court denied the

21    motion for leave to file a supporting memorandum, dismissed the § 2255 motion, and

22    granted leave to file an amended § 2255 motion.  Doc. 4.  Movant filed his amended

23    § 2255 motion on March 4, 2011, raising three grounds for relief based on ineffective

24    assistance of trial counsel.  Doc. 5.  The government filed a response (Doc. 13) and

25    Movant filed a reply (Doc. 14).  Judge Anderson issued an R&R recommending that the

26    motion be denied and that a certificate of appealability ("COA") and leave to proceed *in*

27    *forma pauperis* on appeal be denied because Movant has not made a substantial showing

28    of the denial of a constitutional right.  Doc. 17, at 19.  Movant has filed an objection on

1   Grounds One, Two, and Three, argues that Judge Anderson failed to consider the whole

2   record, and raises three factual objections.  Doc. 18.  The Court will consider Movant's

3   factual objections before turning to those based on law.

4   **II.      Factual Objections.**

5           **A.      Legal Standard.**

6           A district court must grant an evidentiary hearing on a movant's § 2255 motion if

7   there is a factual dispute and the petitioner's version, if true, would warrant relief.  *United*

8   *States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000).  Evidentiary hearings

9   are particularly appropriate when "claims raise facts which occurred out of the courtroom

10  and off the record."  *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).

11          **B.      Discussion.**

12          Movant objects that the facts he contested in his reply brief (Doc. 14) nonetheless

13  appear in Judge Anderson's R&R.  Doc. 18, at 20.  Movant takes issue with (1) the

14  timeline surrounding the disclosure of Mr. Law's discovery, (2) the allegation that

15  Movant's Mauritius counsel discouraged Mr. Law from traveling to the United States to

16  testify, and (3) the government's claim that Movant has no standing to take action against

17  Deutsche Bank and Inter-Ocean Management in Mauritius.  *Id.* at 20-21.

18          Judge Anderson's R&R sets forth the following relevant dates with respect to Mr.

19  Law.  *See* Doc. 17, at 4-5.  On May 9, 2007, the government advised Mr. Law that his

20  testimony would be of significant assistance in its case against Movant.  On May 11,

21  2007, Mr. Law responded that he was willing to assist the government, but that Mauritius

22  law limited his ability to discuss the trust he had helped Movant and codefendants

23  establish.  On May 12, 2007, the government responded that it understood and accepted

24  that limitation, but still wanted to speak with Mr. Law.  On May 25, 2007, Mr. Law

25  agreed to cooperate with the government in exchange for immunity from prosecution.

26  The government claims to have provided its May 12, 2007 letter to Movant and

27  codefendants in discovery on May 18, 2007.  Mr. Law was listed as a witness on the

28  government's witness list, filed on May 30, 2007.  On June 8, 2007, three days after trial

1    started, Movant's Mauritius counsel sought and obtained an *ex parte* temporary

2    injunction from the Supreme Court of Mauritius that limited Mr. Law's ability to testify.

3    The dates in Judge Anderson's R&R match the dates alleged by Movant in his

4    reply brief (Doc. 14, at 2-3) and his objections to the R&R (Doc. 18, at 18-19 n.3), with

5    the exception of the May 18, 2007 date on which the government allegedly provided

6    Movant with a copy of its May 12, 2007 letter to Mr. Law.  Movant argues that, "[f]or

7    this claim to be true, the Government would have to have disclosed Law's planned

8    appearance at trial before offering him conditional immunity on May 25, 2007 or his

9    acceptance of the offer on May 29, 2007."[1]  Doc. 14, at 3.  The government does not

10   claim, however, that it disclosed Mr. Law's planned appearance at trial on May 18, 2007,

11   but merely that, on that date, it provided Movant with its May 12, 2007 letter to Mr. Law.

12   *See* Doc. 13, at 7.  Movant offers no other evidence to refute the implication that he was

13   at least aware of the government's communications with and interest in Mr. Law by

14   May 18, 2007.

15   Movant agrees that the government filed its witness list naming Mr. Law as a

16   witness on May 30, 2007.  Doc. 14, at 3; Doc. 18, at 18 n.3.  Movant also concedes that

17   his Mauritius counsel did not file an injunction against Mr. Law until June 8, 2007, three

18   days after the start of trial.  Doc. 14, at 3.  Movant's argument that his trial counsel

19   requested all discovery related to Mr. Law on June 2, 2007, and that the government

20   provided this discovery on June 3, 2007 (Doc. 18, at 18-19 n.3), does not alter the fact

21   that Movant was aware from the May 30, 2007 witness list that Mr. Law would testify at

22   trial, and yet waited until after the start of trial and only days before Mr. Law was

23   scheduled to take the stand to initiate the Mauritian injunction.  As the Court noted in its

24   order explaining Movant's sentence, the timing of these events confirmed its conclusion

25

26   [1] Movant's reply brief lists May 25, 2007 as the date the government sent Mr. Law
     an offer of conditional immunity (Doc. 14, at 2), but in Movant's objections to the R&R,
27   he notes that "Laval Law did not accept the Government's offer of immunity until
     May 25, 2007" (Doc. 18, at 18 n.3).  It appears that the government indeed sent Mr. Law
28   an offer of conditional immunity on May 25, 2007, and that Mr. Law accepted on
     May 29, 2007.  *See* CR Doc. 259-1, at 43-45.

1   that Movant initiated the lawsuit in Mauritius not to protect the confidential information

2   of Ganymede Marketing, Ltd. ("Ganymede"), Movant's shell corporation in Mauritius,

3   but to interfere with Mr. Law's testimony.  CR Doc. 358, at 5.

4          Movant disputes the government's allegation that his Mauritius counsel

5   discouraged Mr. Law from traveling to the United States to testify.  He claims that this

6   allegation was refuted by Mr. Law's United States counsel.  Doc. 14, at 5.  Lawrence

7   Palles, Mr. Law's United States counsel, did clarify on the record that "[n]o threat was

8   ever made.  No request or statement that [Mr. Law] shouldn't come here and testify was

9   ever made."  Doc. 272, at 6.  Mr. Palles stated, however, that "the substance of the

10   conversation [between Movant's Mauritius counsel and Mr. Law] and the tone of it

11   [were] quite at odds with what the version [sic] that we have from the defendant's

12   Mauritius counsel."  *Id.*  In expressing his concern about potential repercussions that his

13   client might face in Mauritius as a result of testifying in Movant's trial, Mr. Palles said:

14   "My concern is not with local counsel.  My concern is with what happens in Mauritius.  I

15   don't have any reason to feel as confident with regard to the defendant's lawyer in

16   Mauritius. . . . Mr. Goldsobel told us that the Mauritius lawyer had said that the

17   conversation he had on the phone with Mr. Law a week or two ago was very limited to

18   asking for documents and asking if he had counsel.  I believe if Mr. Law were asked to

19   testify about that, he would tell a very different story."  *Id.*  Thus, while the substance of

20   their conversation is uncertain, the record indicates that Movant's Mauritius counsel did

21   have a conversation with Mr. Law while he was represented by counsel, and that this

22   conversation entailed more than a limited request for documents.  Given the timing of the

23   Mauritian injunction against Mr. Law, even if the Court were to find that Movant's

24   Mauritius counsel never discouraged Mr. Law from testifying, Movant has not shown

25   that his version of the events would warrant relief.  The injunction itself was sufficient to

26   warrant the obstruction of justice enhancement.

27          Similarly, Movant's objection to the government's claim that he had no standing

28   to take action in Mauritius against Deutsche Bank and Inter-Ocean Management, if

1    accepted, would not warrant relief.  The government does not now assert that Movant had

2    no standing to assert rights regarding Ganymede; rather, the government made that

3    argument at a June 12, 2007 hearing on the government's emergency motion for a

4    protective order relating to Mr. Law.  *See* Doc. 13, at 8; CR Doc. 259, at 4.  The Court's

5    post-sentencing order indicates that Movant hid his interest in Ganymede and forced the

6    government to prove, through an affidavit filed by Movant in the Mauritius action, that he

7    actually owned and controlled the company.  CR Doc. 358, at 6.  At the same time,

8    Movant argued that the legal actions he initiated in Mauritius were legitimate because he

9    was the true owner of Ganymede.  *Id.*  The Court was convinced by Movant's duplicity

10   relating to his interest in Ganymede that the Mauritius lawsuit was not filed for the

11   legitimate purpose of protecting Ganymede, but for the illegitimate purpose of interfering

12   with evidence at trial.  *Id.*

13           In sum, none of Movant's factual objections, even if credited, would warrant

14   habeas relief.  *See Chacon-Palomares*, 208 F.3d at 1159.  The Court therefore declines to

15   hold an evidentiary hearing, and will proceed to address Movant's legal objections.

16   **III.    Legal Objections.**

17           **A.    Standard of Review.**

18           Section 2255 provides, in relevant part:

19
20           A prisoner in custody under sentence of a [federal] court . . . claiming the
             right to be released upon the ground that the sentence was imposed in
21           violation of the Constitution or laws of the United States, . . . or is
             otherwise subject to collateral attack, may move the court which imposed
22           the sentence to vacate, set aside, or correct the sentence.

23

24   28 U.S.C. § 2255(a).

25           A party may file specific written objections to the R&R's proposed findings and

26   recommendations.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  The Court must

27   undertake a de novo review of those portions of the R&R to which specific objections are

28   made.  *See id.*; *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*,

1    328 F.3d 1114, 1121 (9th Cir. 2003).  The Court may accept, reject, or modify, in whole

2    or in part, the findings or recommendations made by the magistrate judge.  Fed. R. Civ.

3    P. 72(b); 28 U.S.C. § 636(b)(1).

4          In the context of ineffective assistance of counsel claims, "[j]udicial scrutiny of

5    counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  When

6    reviewing counsel's performance, the Court engages a strong presumption that counsel

7    rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  To

8    prevail on a claim for ineffective assistance of counsel, Movant must show that "(1) his

9    attorney's performance was unreasonable under prevailing professional standards, and

10   (2) a reasonable probability that but for counsel's unprofessional errors, the results would

11   have been different."  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)

12   (quoting *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)).  *Strickland* defines

13   reasonable probability as "a probability sufficient to undermine confidence in the

14   outcome."  *Id.*

15         **B.     Failure to Review the Whole Record.**

16         Movant objects that the R&R makes no reference to Movant's reply brief

17   (Doc. 14), other than to acknowledge its existence (Doc. 17, at 1).  Doc. 18, at 20.  All

18   citations in the R&R to Movant's arguments refer to his amended motion (Doc. 5) and

19   accompanying memorandum (Doc. 6).  *Id.*  Movant contends that Judge Anderson failed

20   to review the whole record because he did not incorporate any of the arguments made in

21   Movant's reply brief.  *Id.*

22         The Ninth Circuit has explained that "[t]he record must show that the district court

23   examined all relevant parts of the state court record."  *Richmond v. Ricketts*, 774

24   F.2d 957, 961 (9th Cir. 1985).  Here, the R&R shows that Judge Anderson carefully

25   analyzed all of the claims set forth by Movant.  The Court cannot conclude, solely based

26   on lack of citations, that Judge Anderson completely disregarded Movant's reply brief.

27         **C.     Ground One: Defining Obscenity According to a National Standard.**

28         On direct appeal, Movant argued that "obscenity disseminated via email must be

1      defined according to a national community standard" because there is "no means to

2      control where geographically their messages will be received." *United States v. Kilbride*,

3      584 F.3d 1240, 1250-51 (9th Cir. 2009).  The Ninth Circuit found that the Court should

4      have instructed the jury to apply a "national community" standard based on *Ashcroft v.*

5      *ACLU*, 535 U.S. 564 (2002), which "most directly addressed" Movant's argument.  *Id.*

6      at 1252.  The Ninth Circuit also found, however, that the error, which was not raised at

7      trial, was "far from plain, and thus not reversible."  *Id.* at 1251, 1255.  In Ground One,

8      Movant argues that because the Ninth Circuit found that the Court should have instructed

9      the jury to apply a national community standard, trial counsel was ineffective for failing

10     to request such an instruction.  Doc. 5, at 5; Doc. 6, at 6.

11                              **1.      Deficient Performance.**

12             Judge Anderson found that trial counsel's performance was not deficient given the

13     unsettled nature of the law at the time of Movant's trial concerning the relevant

14     geographical community for determining whether materials disseminated via email were

15     obscene.  Doc. 17, at 11.  On direct review, the Ninth Circuit relied on *Ashcroft v. ACLU*,

16     in which the Supreme Court considered the constitutionality of the Child Online Privacy

17     Act.  *See Kilbride*, 584 F.3d at 1252.  The Ninth Circuit noted that "[t]he divergent

18     reasoning of the justices in and out of the majority in *Ashcroft* leaves us with no explicit

19     holding as to the appropriate geographic definition of contemporary community standards

20     to be applied" to Movant's case.  *Id.* at 1253.  The court nonetheless "derive[d] guidance

21     from the areas of agreement in the various opinions," and ultimately held that "a national

22     community standard must be applied in regulating obscene speech on the Internet,

23     including obscenity disseminated via email."  *Id.* at 1254.  In so holding, the Ninth

24     Circuit acknowledged that prior to its decision "the relevant law in this area was highly

25     unsettled" and that its conclusion "was far from clear and obvious to the district court."

26     *Id.* at 1255.  Judge Anderson was not persuaded by Movant's argument on Ground One

27     because it was based on the Ninth Circuit's analysis, which was not available during

28     Movant's trial, and thus relied heavily on hindsight.  Doc. 17, at 10.

1          Movant objects that his argument does not rely on hindsight and that trial counsel

2    simply failed to adequately research existing case law in order to raise a timely objection

3    to the community standards in the Court's jury instructions.  Doc. 18, at 4.  Movant's

4    national community standard argument "is not an entirely novel one."  *Kilbride*, 584 F.3d

5    at 1250.  *Ashcroft* was published in 2002 and had been precedent for five years prior to

6    Movant's trial.  Doc. 18, at 5.  Although the Ninth Circuit's conclusion may have been

7    "far from clear and obvious," *Kilbride*, 584 F.3d at 1255, appellate counsel was able to

8    distill the "extremely fractured" opinion of *Ashcroft v. ACLU* and present an argument for

9    a national community standard on appeal.  Doc. 18, at 4.  Movant argues that trial counsel

10   was able to find the relevant cases and conduct the same analysis as appellate counsel,

11   and that counsel's failure to do so constituted deficient performance.  *Id.* at 5.

12         The Supreme Court has cautioned, however, that "every effort be made to

13   eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

14   challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

15   *Strickland*, 466 U.S. at 689.   The clarity or lack of clarity in federal case law on

16   determining whether materials distributed via email are obscene is important in

17   determining whether trial counsel's actions were reasonable at the time the jury

18   instructions were given.  The Ninth Circuit expressly noted that, prior to its decision in

19   this case, "the relevant law in this area was highly unsettled[.]"  *Kilbride*, 584 F.3d

20   at 1255.  Movant takes issue with the fact that Judge Anderson cited a Ninth Circuit

21   unpublished disposition to support his conclusion that counsel's performance was not

22   deficient in view of the unsettled law.  Doc. 18, at 6; *see* Doc. 17, at 11 (citing *United*

23   *States v. Marshall*, 6 Fed. Appx. 626, 627 (9th Cir. 2001)).  But other circuits similarly

24   have declined to hold counsel liable for errors in judgment based on unsettled law.  *See*

25   *United States v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) (holding that counsel's

26   failure to move to dismiss an indictment under the Vienna Convention did not constitute

27   ineffective assistance of counsel when, at the time, no court of appeals had held that the

28   provision at issue formed a basis for a motion to dismiss an indictment); *Smith v.*

1    *Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[A]s an acknowledgement that law is

2    no exact science, the rule that an attorney is not liable for an error of judgment on an

3    unsettled proposition of law is universally recognized[.]") (internal quotation marks and

4    citations omitted); *United States v. Jones*, 918 F.2d 9, 11 (2d Cir. 1990) (holding that an

5    ineffective assistance of counsel claim has no merit when, at the time of trial, the

6    question of whether conspiracy could serve as a predicate act was an unsettled question

7    of law); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A Apr. 17, 1981) ("[C]ounsel

8    is normally not expected to foresee future new developments in the law[.]").

9         Movant's ineffective assistance claim based on trial counsel's failure to object to

10   the community standards jury instruction has no merit because it is unacceptably based

11   on hindsight.  Applying "a strong presumption that counsel's conduct falls within the

12   wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court

13   cannot find fault with Movant's trial counsel.

14                    **2.    Prejudice.**

15        Judge Anderson concluded that even if trial counsel had performed deficiently by

16   failing to propose a national community standard jury instruction, Movant has not

17   established that he was prejudiced as a result.  Doc. 17, at 12.  Movant objects that Judge

18   Anderson's reasoning fails to account for the constitutional error that occurred.  Doc. 18,

19   at 8.  Movant contends that the Court's jury instructions misstated an element of his

20   offense by inaccurately defining the term "obscenity," and that under de novo review

21   "[a]ny omission or misstatement of an element of an offense in the jury instructions is

22   constitutional error and, therefore, requires reversal" unless the error is found "harmless

23   beyond a reasonable doubt."  *Id.* at 8-9 (quoting *Kilbride*, 584 F.3d at 1247); *see*

24   *Chapman v. California*, 386 U.S. 18, 24 (1967).

25        While *Chapman*'s "harmless beyond a reasonable doubt" standard applies on

26   direct review, a less onerous standard applies on habeas review for constitutional error.

27   The test on collateral review is whether the error "had a substantial and injurious effect or

28   influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637

- 10 -

1   (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).   Under this

2   standard, petitioners are not entitled to habeas relief based on trial error unless they can

3   establish that it resulted in "actual prejudice."   *Id.* (quoting *United States v. Lane*, 474

4   U.S. 438, 449 (1986)).   The Ninth Circuit has clarified that *Brecht*'s harmless error

5   review is unnecessary for alleged *Strickland* violations "because '[t]he *Strickland*

6   prejudice analysis is complete in itself; there is no place for an additional harmless-error

7   review.'"   *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v.

8   Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001)).

9          Movant admits that trial counsel's proposed obscenity instruction included an

10   expansive definition of the "present-day community" and did not attempt to limit that

11   community to a precise geographical area.   Doc. 6, at 9; *see* 05-CR-00870-DGC,

12   Docs. 234, 241.   He acknowledges that, at closings, trial counsel argued that the jury

13   should adopt an "expansive" view of the relevant community and consider not only

14   material purchased by defense investigators from several communities in Arizona, but

15   also materials available on "the entire worldwide web."   Doc. 6, at 9.   The Court

16   instructed the jury: "Contemporary community standards are set by what is in fact

17   accepted in the community as a whole; that is to say by society at large, or people in

18   general . . . . The 'community' you should consider in deciding these questions is not

19   defined by a precise geographic area.   You may consider evidence of standards existing

20   in places outside of this particular district."   CR Doc. 330, at 37-38.   In view of these jury

21   instructions, Movant has not shown a reasonable probability that, had counsel requested

22   an instruction on national community standards, the result of the proceeding would have

23   been different. *Strickland*, 466 U.S. at 694.

24          **D.     Ground Two: Conspiracy to Commit Money Laundering.**

25          In Ground Two, Movant argues that if his obscenity convictions are reversed, then

26   it follows that the government failed to establish the requisite underlying unlawful

27   activity to support a conviction for conspiracy to launder money.   Doc. 18, at 10.

28   Movant's conviction for 18 U.S.C. § 1956(a)(2)(B)(i) was premised on his knowledge

1    "that the transportation, transmission, or transfer of the money was designed in whole or

2    in part to conceal or disguise the nature, the location, the source, the ownership, or the

3    control of the proceeds from one of the specified unlawful activities, in this case the

4    transportation of obscene material in violation of 18 U.S.C. § 1462 . . . or the

5    transportation of obscene material for sale or distribution, in violation of 18 U.S.C.

6    § 1465[.]"  Doc. 330, at 48 (Jury Instruction No. 46).  For the reasons discussed above,

7    Movant has not demonstrated ineffective assistance of counsel with respect to his

8    underlying convictions for transporting obscene material.

9           **E.     Ground Three: Sentencing Enhancement for Obstruction of Justice.**

10          In Ground Three, Movant alleges that trial counsel had a conflict of interest which

11    resulted in ineffective assistance of counsel.  Doc. 5, at 7; Doc. 6, at 15.  Movant

12    contends that counsel's attempts to distance himself from the Mauritian injunction

13    against Mr. Law led the Court to apply the obstruction of justice sentencing

14    enhancement.[2]  *Id.*  Judge Anderson correctly applied a *Strickland* analysis.  The *Sullivan*

15    exception to the ordinary requirements of *Strickland* is inapplicable because Movant does

16    not allege a conflict of interest caused by joint representation of more than one defendant.

17    Doc. 17, at 16.  *See Earp v. Ornoski*, 431 F.3d 1158, 1182-84 (9th Cir. 2005) (noting that

18    the Supreme Court in *Mickens v. Taylor*, 535 U.S. 162 (2002), expressly limited the

19    "actual conflict of interest" exception in *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), to

20    cases involving joint representation, and that *Strickland* otherwise applies).  Movant does

21    not object to the application of *Strickland*, but objects to Judge Anderson's findings that

22    Movant has not demonstrated deficient performance or prejudice.

23          **1.     Deficient Performance.**

24          Movant has submitted several emails purporting to show that trial counsel initiated

25    the Mauritian injunction against Mr. Law.  Doc. 6, at 29-37.  The Court agrees with

26    Judge Anderson that these emails indicate that trial counsel participated in

27    _____

28          [2] Judge Anderson has set forth the relevant facts relating to the Mauritius lawsuit.
       Doc. 17, at 4-6.  The Court will not repeat them here.

- 12 -

1    communications regarding the Mauritian injunction, but not that trial counsel was

2    responsible for initiating the injunction.  *See id.*; Doc. 17, at 16.

3    　　　　Movant claims that trial counsel did not merely omit mentioning his personal

4    involvement with the injunction, but that he "made the objectively unreasonable decision

5    to lie to the District Court."  Doc. 18, at 13-14.  According to Movant, trial counsel lied

6    by actively denying his involvement and casting the perceived blame for the injunction

7    onto Movant and Movant's counsel in Mauritius, and asserting that Movant's counsel in

8    Mauritius acted alone in drafting the pleading filed with the lawsuit and injunction.  *Id.*

9    at 14.  The record does not support these allegations.  Trial counsel did deny having a

10   role in the Mauritian injunction.  *See* Doc. 18, at 39 (Mr. Goldsobel: "The government

11   also casts the proceeding in Mauritius as one limited to Mr. Law.  That is not the case.

12   The proceeding in Mauritius which, by the way, Your Honor, I do not have a role in,

13   relates to Deutsche Bank as well as Inter Ocean Management Limited[.]").  The Court

14   interprets this statement as a denial of any strategic involvement beyond communicating

15   with Mauritian counsel about proceedings in the district court.  Movant has provided no

16   evidence that trial counsel's statements were false.  Trial counsel did not, as Movant

17   suggests, cast the blame for the injunction onto Movant; rather, trial counsel repeatedly

18   defended Movant before the district court.  Doc. 18, at 40 (The Court: "How is that

19   consistent with your assertion that you didn't know until you got this pleading that [Mr.

20   Law] was going to testify about anything beyond the e-mails?"  Mr. Goldsobel: "Your

21   Honor, I didn't have any role in drafting that pleading. . . . I don't believe Mr. Kilbride

22   saw that pleading either before it was filed."); *id.* at 45 (Mr. Goldsobel: "[W]e obtained a

23   lawful order in Mauritius, or Mr. Kilbride through his counsel in Mauritius."); *id.* at 36

24   (Mr. Goldsobel: "Mr. Kilbride never saw the pleading before it was filed in court.  He

25   never signed it.  Never notarized it.  He didn't see it.  He saw it after the injunction was

26   already obtained.  It was a pleading drafted by the lawyer in Mauritius.").

27   　　　　Trial counsel's performance was reasonable at both the trial and sentencing stages.

28   At trial, he argued that the Mauritian injunction was lawfully obtained and repeatedly

1    emphasized that it was not intended to impede Mr. Law's ability to testify. CR Doc. 439,

2    at 8-9, 10, 12-13, 25.  Trial counsel also submitted a supplemental memorandum before

3    sentencing, which reiterated that an obstruction of justice enhancement should not be

4    imposed because the Mauritian injunction was lawfully obtained from a foreign

5    jurisdiction and not intended to prevent Mr. Law from testifying.  CR Doc. 355, at 2-4.

6    Trial counsel further argued that the enhancement should not apply because the Mauritian

7    injunction did not actually prevent Mr. Law from testifying, that the injunction merely

8    prevented Mr. Law from disclosing confidential information that was protected under

9    Mauritian law, and that he was unaware of any legal authority that a lawfully issued court

10   order could form the basis for an obstruction of justice enhancement.  *Id.* at 2, 4.  Movant

11   may have wanted his trial counsel to mention his personal involvement with the

12   Mauritian injunction, but effective assistance need not be "infallible" assistance.  *United*

13   *States v. McAdams*, 759 F.2d 1407, 1409 (9th Cir. 1985).  Here, it is clear that trial

14   counsel acted within the wide range of professionally competent assistance.  *Strickland*,

15   466 U.S. at 690.

16                    **2.      Prejudice.**

17          Movant argues that the Court was initially amenable to trial counsel's argument

18   that the injunction was not specifically targeted at preventing Mr. Law from testifying,

19   and that it was only counsel's continued deception that caused a loss of faith with the

20   Court.  Doc. 18, at 45.  Moreover, Movant argues that the Court imposed an obstruction

21   of justice enhancement "precisely because counsel refused to clearly and honestly declare

22   his involvement in the lawsuit and injunction against Mr. Law in Mauritius."  *Id.* at 19.

23   Movant relies on the following portion of the Court's sentencing order: "When Defendant

24   Kilbride's United States counsel learned of the Mauritius lawsuit, he promptly took steps

25   to have Defendant Kilbride eliminate the injunction against Mr. Law.  These events

26   confirm the Court's conclusion that Defendant Kilbride initiated the lawsuit in Mauritius

27   . . . to interfere with Laval Law's testimony."  *Id.* (quoting CR Doc. 358, at 5).

28

1   Movant has not shown a reasonable likelihood that the result of his sentencing
2   would have been different had the Court been aware of trial counsel's alleged
3   involvement in obtaining the Mauritian injunction.  In the same order referenced by
4   Movant, the Court explained its reasons for concluding that the injunction was a tactical
5   maneuver for the purpose of interfering with Mr. Law's testimony.  *See* CR Doc. 358,
6   at 5.  Movant took no action when the government obtained documents from Ganymede
7   and provided these documents to Movant during the course of discovery.  *Id.*  During
8   May 2007, the government arranged for Mr. Law to travel to the United States and testify
9   against Movant and his codefendants at trial; this information was disclosed to Movant
10  before trial, and yet he still took no action in the Mauritius courts.  *Id.*  It was not until
11  June 8, 2007, after trial began and only days before Mr. Law was to testify, that Movant
12  initiated legal action in Mauritius concerning Mr. Law's anticipated testimony in this
13  Court.  *Id.*  Even if trial counsel had revealed his communications with Movant's counsel
14  in Mauritius, the Court cannot conclude that there is a reasonable probability that the
15  obstruction of justice enhancement would not have applied.  The fact remains that the
16  injunction was sought on Movant's behalf through his counsel, and that Movant
17  ultimately was responsible for the injunction.

18  **IV.   Conclusion.**

19  Counsel's performance "falls within the wide range of reasonable professional
20  assistance," *Strickland*, 466 U.S. at 689, and Movant has not shown that the result at trial
21  would have been different had counsel challenged the community standards instruction
22  for obscenity or disclosed his communications with Mauritius counsel.  The Court will
23  accept the R&R on Movant's ineffective assistance of counsel claims.

24  The R&R also recommended denying a certificate of appealability ("COA") and
25  leave to appeal *in forma pauperis* because "Movant has not made a substantial showing
26  of the denial of a constitutional right."  Doc. 17, at 19.  Movant has failed to establish that
27  a COA and leave to appeal *in forma pauperis* are warranted, and the Court therefore
28  adopts these recommendations.   The Court also concludes that Movant has been

1    sufficiently able to set forth his arguments, and that appointment of counsel is not

2    warranted.

3           **IT IS ORDERED:**

4           1.      The factual findings and conclusions in Judge Anderson's R&R (Doc. 17)

5    are **accepted**.

6           2.      Jeffrey A. Kilbride's petition to vacate, set aside, or correct sentence

7    (Doc. 5) is **denied**.

8           3.      A certificate of appealability and leave to proceed *in forma pauperis* on

9    appeal are **denied** as stated above.

10          4.      The Clerk shall terminate this action.

11          Dated this 28th day of June, 2012.

12

13

14   _____

15                  David G. Campbell
                    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28