**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>     Plaintiff,<br><br>v.<br><br>Jeffrey A. Kilbride,<br><br>     Defendant/Movant. | No.  CV11-0174-PHX-DGC<br>   CR05-0870 PHX DGC<br><br>**ORDER** |

   Jeffrey A. Kilbride moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Doc. 5.  On April 19, 2012, Magistrate Judge Lawrence O. Anderson issued a report and recommendation ("R&R") that recommended the motion be denied. Doc. 17.  Petition has filed an objection to the R&R.  Doc. 18.  For the reasons that follow, the Court will accept the R&R and deny Mr. Kilbride's motion.

**I. Background.**

   On August 25, 2005, Movant and two co-defendants were indicted in the United States District Court, District of Arizona, on numerous counts pertaining to the electronic transmission of obscene images.  05-CR-00870-DGC, Doc. 1.  Following a jury trial, Movant was convicted of one count of conspiracy to commit fraud in connection with electronic mail in violation of 18 U.S.C. § 371 (Count 1), two counts of committing fraud in connection with electronic mail in violation of 18 U.S.C. §§ 1037(a)(3) and (a)(4) (Counts 2 and 3), two counts of importation or transportation of obscene material in violation of 18 U.S.C. § 1462 (Counts 4 and 5), two counts of transportation of obscene

1    material for sale or distribution in violation of 18 U.S.C. § 1465 (Counts 6 and 7), and

2    one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h) (Count 8).

3    CR Doc. 296.

4         On August 24, 2007, the Court denied Movant's motion for judgment of acquittal

5    or, in the alternative, for a new trial.  Doc. 334.  On September 24, 2007, the Court

6    sentenced Movant to 78 months imprisonment followed by three years of supervised

7    release.  CR Doc. 359.  This sentence included an enhancement for obstruction of justice

8    pursuant to U.S.S.G. § 3C1.1.  CR Doc. 358, at 4.  Movant filed an appeal in the Ninth

9    Circuit raising several grounds for relief:  (1) the Court erred in instructing the jury on the

10   definition of "obscene" by too narrowly defining the phrase "contemporary community

11   standards," (2) his conviction for conspiracy to commit money laundering should be

12   vacated because of the lack of a predicate-offense felony conviction, and (3) the Court

13   erred in applying the U.S.S.G. § 3C1.1 sentencing enhancement for obstruction of justice.

14   CR Doc. 382; *see* Doc. 17.  The Ninth Circuit affirmed Movant's conviction and sentence

15   and remanded the case to this Court to correct a clerical error in the written judgment.

16   CR Docs. 532, 532-1.  The Court issued an amended judgment on March 19, 2010.

17   CR Doc. 539.

18        On January 26, 2011, Movant filed a pro se motion to vacate, set aside, or correct

19   his sentence pursuant to 28 U.S.C. § 2255.  Doc. 1.  He then filed a motion for leave to

20   file a supporting memorandum.  Doc. 3.  On February 8, 2011, the Court denied the

21   motion for leave to file a supporting memorandum, dismissed the § 2255 motion, and

22   granted leave to file an amended § 2255 motion.  Doc. 4.  Movant filed his amended

23   § 2255 motion on March 4, 2011, raising three grounds for relief based on ineffective

24   assistance of trial counsel.  Doc. 5.  The government filed a response (Doc. 13) and

25   Movant filed a reply (Doc. 14).  Judge Anderson issued an R&R recommending that the

26   motion be denied and that a certificate of appealability ("COA") and leave to proceed *in*

27   *forma pauperis* on appeal be denied because Movant has not made a substantial showing

28   of the denial of a constitutional right.  Doc. 17, at 19.  Movant has filed an objection on

Grounds One, Two, and Three, argues that Judge Anderson failed to consider the whole record, and raises three factual objections.  Doc. 18.  The Court will consider Movant's factual objections before turning to those based on law.

**II.    Factual Objections.**

      **A.    Legal Standard.**

A district court must grant an evidentiary hearing on a movant's § 2255 motion if there is a factual dispute and the petitioner's version, if true, would warrant relief.  *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000).  Evidentiary hearings are particularly appropriate when "claims raise facts which occurred out of the courtroom and off the record."  *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989).

      **B.    Discussion.**

Movant objects that the facts he contested in his reply brief (Doc. 14) nonetheless appear in Judge Anderson's R&R.  Doc. 18, at 20.  Movant takes issue with (1) the timeline surrounding the disclosure of Mr. Law's discovery, (2) the allegation that Movant's Mauritius counsel discouraged Mr. Law from traveling to the United States to testify, and (3) the government's claim that Movant has no standing to take action against Deutsche Bank and Inter-Ocean Management in Mauritius.  *Id.* at 20-21.

Judge Anderson's R&R sets forth the following relevant dates with respect to Mr. Law.  *See* Doc. 17, at 4-5.  On May 9, 2007, the government advised Mr. Law that his testimony would be of significant assistance in its case against Movant.  On May 11, 2007, Mr. Law responded that he was willing to assist the government, but that Mauritius law limited his ability to discuss the trust he had helped Movant and codefendants establish.  On May 12, 2007, the government responded that it understood and accepted that limitation, but still wanted to speak with Mr. Law.  On May 25, 2007, Mr. Law agreed to cooperate with the government in exchange for immunity from prosecution.  The government claims to have provided its May 12, 2007 letter to Movant and codefendants in discovery on May 18, 2007.  Mr. Law was listed as a witness on the government's witness list, filed on May 30, 2007.  On June 8, 2007, three days after trial

1    started, Movant's Mauritius counsel sought and obtained an *ex parte* temporary

2    injunction from the Supreme Court of Mauritius that limited Mr. Law's ability to testify.

3        The dates in Judge Anderson's R&R match the dates alleged by Movant in his

4    reply brief (Doc. 14, at 2-3) and his objections to the R&R (Doc. 18, at 18-19 n.3), with

5    the exception of the May 18, 2007 date on which the government allegedly provided

6    Movant with a copy of its May 12, 2007 letter to Mr. Law.  Movant argues that, "[f]or

7    this claim to be true, the Government would have to have disclosed Law's planned

8    appearance at trial before offering him conditional immunity on May 25, 2007 or his

9    acceptance of the offer on May 29, 2007."[1]  Doc. 14, at 3.  The government does not

10   claim, however, that it disclosed Mr. Law's planned appearance at trial on May 18, 2007,

11   but merely that, on that date, it provided Movant with its May 12, 2007 letter to Mr. Law.

12   *See* Doc. 13, at 7.  Movant offers no other evidence to refute the implication that he was

13   at least aware of the government's communications with and interest in Mr. Law by

14   May 18, 2007.

15       Movant agrees that the government filed its witness list naming Mr. Law as a

16   witness on May 30, 2007.  Doc. 14, at 3; Doc. 18, at 18 n.3.  Movant also concedes that

17   his Mauritius counsel did not file an injunction against Mr. Law until June 8, 2007, three

18   days after the start of trial.  Doc. 14, at 3.  Movant's argument that his trial counsel

19   requested all discovery related to Mr. Law on June 2, 2007, and that the government

20   provided this discovery on June 3, 2007 (Doc. 18, at 18-19 n.3), does not alter the fact

21   that Movant was aware from the May 30, 2007 witness list that Mr. Law would testify at

22   trial, and yet waited until after the start of trial and only days before Mr. Law was

23   scheduled to take the stand to initiate the Mauritian injunction.  As the Court noted in its

24   order explaining Movant's sentence, the timing of these events confirmed its conclusion

25   _____

26       [1] Movant's reply brief lists May 25, 2007 as the date the government sent Mr. Law
     an offer of conditional immunity (Doc. 14, at 2), but in Movant's objections to the R&R,
27   he notes that "Laval Law did not accept the Government's offer of immunity until
     May 25, 2007" (Doc. 18, at 18 n.3).  It appears that the government indeed sent Mr. Law
28   an offer of conditional immunity on May 25, 2007, and that Mr. Law accepted on
     May 29, 2007.  *See* CR Doc. 259-1, at 43-45.

1   that Movant initiated the lawsuit in Mauritius not to protect the confidential information

2   of Ganymede Marketing, Ltd. ("Ganymede"), Movant's shell corporation in Mauritius,

3   but to interfere with Mr. Law's testimony.  CR Doc. 358, at 5.

4        Movant disputes the government's allegation that his Mauritius counsel

5   discouraged Mr. Law from traveling to the United States to testify.  He claims that this

6   allegation was refuted by Mr. Law's United States counsel.  Doc. 14, at 5.  Lawrence

7   Palles, Mr. Law's United States counsel, did clarify on the record that "[n]o threat was

8   ever made.  No request or statement that [Mr. Law] shouldn't come here and testify was

9   ever made."  Doc. 272, at 6.  Mr. Palles stated, however, that "the substance of the

10   conversation [between Movant's Mauritius counsel and Mr. Law] and the tone of it

11   [were] quite at odds with what the version [sic] that we have from the defendant's

12   Mauritius counsel."  *Id.*  In expressing his concern about potential repercussions that his

13   client might face in Mauritius as a result of testifying in Movant's trial, Mr. Palles said:

14   "My concern is not with local counsel.  My concern is with what happens in Mauritius.  I

15   don't have any reason to feel as confident with regard to the defendant's lawyer in

16   Mauritius. . . . Mr. Goldsobel told us that the Mauritius lawyer had said that the

17   conversation he had on the phone with Mr. Law a week or two ago was very limited to

18   asking for documents and asking if he had counsel.  I believe if Mr. Law were asked to

19   testify about that, he would tell a very different story."  *Id.*  Thus, while the substance of

20   their conversation is uncertain, the record indicates that Movant's Mauritius counsel did

21   have a conversation with Mr. Law while he was represented by counsel, and that this

22   conversation entailed more than a limited request for documents.  Given the timing of the

23   Mauritian injunction against Mr. Law, even if the Court were to find that Movant's

24   Mauritius counsel never discouraged Mr. Law from testifying, Movant has not shown

25   that his version of the events would warrant relief.  The injunction itself was sufficient to

26   warrant the obstruction of justice enhancement.

27        Similarly, Movant's objection to the government's claim that he had no standing

28   to take action in Mauritius against Deutsche Bank and Inter-Ocean Management, if

accepted, would not warrant relief.  The government does not now assert that Movant had no standing to assert rights regarding Ganymede; rather, the government made that argument at a June 12, 2007 hearing on the government's emergency motion for a protective order relating to Mr. Law.  *See* Doc. 13, at 8; CR Doc. 259, at 4.  The Court's post-sentencing order indicates that Movant hid his interest in Ganymede and forced the government to prove, through an affidavit filed by Movant in the Mauritius action, that he actually owned and controlled the company.  CR Doc. 358, at 6.  At the same time, Movant argued that the legal actions he initiated in Mauritius were legitimate because he was the true owner of Ganymede.  *Id.*  The Court was convinced by Movant's duplicity relating to his interest in Ganymede that the Mauritius lawsuit was not filed for the legitimate purpose of protecting Ganymede, but for the illegitimate purpose of interfering with evidence at trial.  *Id.*

In sum, none of Movant's factual objections, even if credited, would warrant habeas relief.  *See Chacon-Palomares*, 208 F.3d at 1159.  The Court therefore declines to hold an evidentiary hearing, and will proceed to address Movant's legal objections.

## III.   Legal Objections.

### A.   Standard of Review.

Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).

A party may file specific written objections to the R&R's proposed findings and recommendations.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  The Court must undertake a de novo review of those portions of the R&R to which specific objections are made.  *See id.*; *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*,

328 F.3d 1114, 1121 (9th Cir. 2003).  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

In the context of ineffective assistance of counsel claims, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  When reviewing counsel's performance, the Court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  To prevail on a claim for ineffective assistance of counsel, Movant must show that "(1) his attorney's performance was unreasonable under prevailing professional standards, and (2) a reasonable probability that but for counsel's unprofessional errors, the results would have been different."  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)).  *Strickland* defines reasonable probability as "a probability sufficient to undermine confidence in the outcome."  *Id.*

**B.      Failure to Review the Whole Record.**

Movant objects that the R&R makes no reference to Movant's reply brief (Doc. 14), other than to acknowledge its existence (Doc. 17, at 1).  Doc. 18, at 20.  All citations in the R&R to Movant's arguments refer to his amended motion (Doc. 5) and accompanying memorandum (Doc. 6).  *Id.*  Movant contends that Judge Anderson failed to review the whole record because he did not incorporate any of the arguments made in Movant's reply brief.  *Id.*

The Ninth Circuit has explained that "[t]he record must show that the district court examined all relevant parts of the state court record."  *Richmond v. Ricketts*, 774 F.2d 957, 961 (9th Cir. 1985).  Here, the R&R shows that Judge Anderson carefully analyzed all of the claims set forth by Movant.  The Court cannot conclude, solely based on lack of citations, that Judge Anderson completely disregarded Movant's reply brief.

**C.      Ground One: Defining Obscenity According to a National Standard.**

On direct appeal, Movant argued that "obscenity disseminated via email must be

defined according to a national community standard" because there is "no means to control where geographically their messages will be received." *United States v. Kilbride*, 584 F.3d 1240, 1250-51 (9th Cir. 2009).  The Ninth Circuit found that the Court should have instructed the jury to apply a "national community" standard based on *Ashcroft v. ACLU*, 535 U.S. 564 (2002), which "most directly addressed" Movant's argument.  *Id.* at 1252.  The Ninth Circuit also found, however, that the error, which was not raised at trial, was "far from plain, and thus not reversible."  *Id.* at 1251, 1255.  In Ground One, Movant argues that because the Ninth Circuit found that the Court should have instructed the jury to apply a national community standard, trial counsel was ineffective for failing to request such an instruction.  Doc. 5, at 5; Doc. 6, at 6.

### 1.    Deficient Performance.

Judge Anderson found that trial counsel's performance was not deficient given the unsettled nature of the law at the time of Movant's trial concerning the relevant geographical community for determining whether materials disseminated via email were obscene.  Doc. 17, at 11.  On direct review, the Ninth Circuit relied on *Ashcroft v. ACLU*, in which the Supreme Court considered the constitutionality of the Child Online Privacy Act.  *See Kilbride*, 584 F.3d at 1252.  The Ninth Circuit noted that "[t]he divergent reasoning of the justices in and out of the majority in *Ashcroft* leaves us with no explicit holding as to the appropriate geographic definition of contemporary community standards to be applied" to Movant's case.  *Id.* at 1253.  The court nonetheless "derive[d] guidance from the areas of agreement in the various opinions," and ultimately held that "a national community standard must be applied in regulating obscene speech on the Internet, including obscenity disseminated via email."  *Id.* at 1254.  In so holding, the Ninth Circuit acknowledged that prior to its decision "the relevant law in this area was highly unsettled" and that its conclusion "was far from clear and obvious to the district court." *Id.* at 1255.  Judge Anderson was not persuaded by Movant's argument on Ground One because it was based on the Ninth Circuit's analysis, which was not available during Movant's trial, and thus relied heavily on hindsight.  Doc. 17, at 10.

1    Movant objects that his argument does not rely on hindsight and that trial counsel

2   simply failed to adequately research existing case law in order to raise a timely objection

3   to the community standards in the Court's jury instructions.  Doc. 18, at 4.  Movant's

4   national community standard argument "is not an entirely novel one."  *Kilbride*, 584 F.3d

5   at 1250.  *Ashcroft* was published in 2002 and had been precedent for five years prior to

6   Movant's trial.  Doc. 18, at 5.  Although the Ninth Circuit's conclusion may have been

7   "far from clear and obvious," *Kilbride*, 584 F.3d at 1255, appellate counsel was able to

8   distill the "extremely fractured" opinion of *Ashcroft v. ACLU* and present an argument for

9   a national community standard on appeal.  Doc. 18, at 4.  Movant argues that trial counsel

10  was able to find the relevant cases and conduct the same analysis as appellate counsel,

11  and that counsel's failure to do so constituted deficient performance.  *Id.* at 5.

12    The Supreme Court has cautioned, however, that "every effort be made to

13  eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

14  challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

15  *Strickland*, 466 U.S. at 689.  The clarity or lack of clarity in federal case law on

16  determining whether materials distributed via email are obscene is important in

17  determining whether trial counsel's actions were reasonable at the time the jury

18  instructions were given.  The Ninth Circuit expressly noted that, prior to its decision in

19  this case, "the relevant law in this area was highly unsettled[.]"  *Kilbride*, 584 F.3d

20  at 1255.  Movant takes issue with the fact that Judge Anderson cited a Ninth Circuit

21  unpublished disposition to support his conclusion that counsel's performance was not

22  deficient in view of the unsettled law.  Doc. 18, at 6; *see* Doc. 17, at 11 (citing *United*

23  *States v. Marshall*, 6 Fed. Appx. 626, 627 (9th Cir. 2001)).  But other circuits similarly

24  have declined to hold counsel liable for errors in judgment based on unsettled law.  *See*

25  *United States v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) (holding that counsel's

26  failure to move to dismiss an indictment under the Vienna Convention did not constitute

27  ineffective assistance of counsel when, at the time, no court of appeals had held that the

28  provision at issue formed a basis for a motion to dismiss an indictment); *Smith v.*

- 9 -

*Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[A]s an acknowledgement that law is no exact science, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized[.]") (internal quotation marks and citations omitted); *United States v. Jones*, 918 F.2d 9, 11 (2d Cir. 1990) (holding that an ineffective assistance of counsel claim has no merit when, at the time of trial, the question of whether conspiracy could serve as a predicate act was an unsettled question of law); *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. Unit A Apr. 17, 1981) ("[C]ounsel is normally not expected to foresee future new developments in the law[.]").

Movant's ineffective assistance claim based on trial counsel's failure to object to the community standards jury instruction has no merit because it is unacceptably based on hindsight.  Applying "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, the Court cannot find fault with Movant's trial counsel.

## 2.    Prejudice.

Judge Anderson concluded that even if trial counsel had performed deficiently by failing to propose a national community standard jury instruction, Movant has not established that he was prejudiced as a result.  Doc. 17, at 12.  Movant objects that Judge Anderson's reasoning fails to account for the constitutional error that occurred.  Doc. 18, at 8.  Movant contends that the Court's jury instructions misstated an element of his offense by inaccurately defining the term "obscenity," and that under de novo review "[a]ny omission or misstatement of an element of an offense in the jury instructions is constitutional error and, therefore, requires reversal" unless the error is found "harmless beyond a reasonable doubt."  *Id.* at 8-9 (quoting *Kilbride*, 584 F.3d at 1247); *see Chapman v. California*, 386 U.S. 18, 24 (1967).

While *Chapman*'s "harmless beyond a reasonable doubt" standard applies on direct review, a less onerous standard applies on habeas review for constitutional error.  The test on collateral review is whether the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).   Under this standard, petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."   *Id.* (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).   The Ninth Circuit has clarified that *Brecht*'s harmless error review is unnecessary for alleged *Strickland* violations "because '[t]he *Strickland* prejudice analysis is complete in itself; there is no place for an additional harmless-error review.'"   *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001)).

Movant admits that trial counsel's proposed obscenity instruction included an expansive definition of the "present-day community" and did not attempt to limit that community to a precise geographical area.   Doc. 6, at 9; *see* 05-CR-00870-DGC, Docs. 234, 241.   He acknowledges that, at closings, trial counsel argued that the jury should adopt an "expansive" view of the relevant community and consider not only material purchased by defense investigators from several communities in Arizona, but also materials available on "the entire worldwide web."   Doc. 6, at 9.   The Court instructed the jury: "Contemporary community standards are set by what is in fact accepted in the community as a whole; that is to say by society at large, or people in general . . . . The 'community' you should consider in deciding these questions is not defined by a precise geographic area.   You may consider evidence of standards existing in places outside of this particular district."   CR Doc. 330, at 37-38.   In view of these jury instructions, Movant has not shown a reasonable probability that, had counsel requested an instruction on national community standards, the result of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.

## D. Ground Two: Conspiracy to Commit Money Laundering.

In Ground Two, Movant argues that if his obscenity convictions are reversed, then it follows that the government failed to establish the requisite underlying unlawful activity to support a conviction for conspiracy to launder money.   Doc. 18, at 10. Movant's conviction for 18 U.S.C. § 1956(a)(2)(B)(i) was premised on his knowledge

1   "that the transportation, transmission, or transfer of the money was designed in whole or
2   in part to conceal or disguise the nature, the location, the source, the ownership, or the
3   control of the proceeds from one of the specified unlawful activities, in this case the
4   transportation of obscene material in violation of 18 U.S.C. § 1462 . . . or the
5   transportation of obscene material for sale or distribution, in violation of 18 U.S.C.
6   § 1465[.]"  Doc. 330, at 48 (Jury Instruction No. 46).  For the reasons discussed above,
7   Movant has not demonstrated ineffective assistance of counsel with respect to his
8   underlying convictions for transporting obscene material.

9       **E.     Ground Three: Sentencing Enhancement for Obstruction of Justice.**

10          In Ground Three, Movant alleges that trial counsel had a conflict of interest which
11  resulted in ineffective assistance of counsel.   Doc. 5, at 7; Doc. 6, at 15.   Movant
12  contends that counsel's attempts to distance himself from the Mauritian injunction
13  against Mr. Law led the Court to apply the obstruction of justice sentencing
14  enhancement.[2]  *Id.*  Judge Anderson correctly applied a *Strickland* analysis.  The *Sullivan*
15  exception to the ordinary requirements of *Strickland* is inapplicable because Movant does
16  not allege a conflict of interest caused by joint representation of more than one defendant.
17  Doc. 17, at 16.  *See Earp v. Ornoski*, 431 F.3d 1158, 1182-84 (9th Cir. 2005) (noting that
18  the Supreme Court in *Mickens v. Taylor*, 535 U.S. 162 (2002), expressly limited the
19  "actual conflict of interest" exception in *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), to
20  cases involving joint representation, and that *Strickland* otherwise applies).  Movant does
21  not object to the application of *Strickland*, but objects to Judge Anderson's findings that
22  Movant has not demonstrated deficient performance or prejudice.

23          **1.     Deficient Performance.**

24          Movant has submitted several emails purporting to show that trial counsel initiated
25  the Mauritian injunction against Mr. Law.  Doc. 6, at 29-37.  The Court agrees with
26  Judge Anderson that these emails indicate that trial counsel participated in

27  ───────────────────
28      [2] Judge Anderson has set forth the relevant facts relating to the Mauritius lawsuit.
    Doc. 17, at 4-6.  The Court will not repeat them here.

1   communications regarding the Mauritian injunction, but not that trial counsel was

2   responsible for initiating the injunction.  *See id.*; Doc. 17, at 16.

3           Movant claims that trial counsel did not merely omit mentioning his personal

4   involvement with the injunction, but that he "made the objectively unreasonable decision

5   to lie to the District Court."  Doc. 18, at 13-14.  According to Movant, trial counsel lied

6   by actively denying his involvement and casting the perceived blame for the injunction

7   onto Movant and Movant's counsel in Mauritius, and asserting that Movant's counsel in

8   Mauritius acted alone in drafting the pleading filed with the lawsuit and injunction.  *Id.*

9   at 14.  The record does not support these allegations.  Trial counsel did deny having a

10  role in the Mauritian injunction.  *See* Doc. 18, at 39 (Mr. Goldsobel: "The government

11  also casts the proceeding in Mauritius as one limited to Mr. Law.  That is not the case.

12  The proceeding in Mauritius which, by the way, Your Honor, I do not have a role in,

13  relates to Deutsche Bank as well as Inter Ocean Management Limited[.]").  The Court

14  interprets this statement as a denial of any strategic involvement beyond communicating

15  with Mauritian counsel about proceedings in the district court.  Movant has provided no

16  evidence that trial counsel's statements were false.  Trial counsel did not, as Movant

17  suggests, cast the blame for the injunction onto Movant; rather, trial counsel repeatedly

18  defended Movant before the district court.  Doc. 18, at 40 (The Court: "How is that

19  consistent with your assertion that you didn't know until you got this pleading that [Mr.

20  Law] was going to testify about anything beyond the e-mails?"  Mr. Goldsobel: "Your

21  Honor, I didn't have any role in drafting that pleading. . . . I don't believe Mr. Kilbride

22  saw that pleading either before it was filed."); *id.* at 45 (Mr. Goldsobel: "[W]e obtained a

23  lawful order in Mauritius, or Mr. Kilbride through his counsel in Mauritius."); *id.* at 36

24  (Mr. Goldsobel: "Mr. Kilbride never saw the pleading before it was filed in court.  He

25  never signed it.  Never notarized it.  He didn't see it.  He saw it after the injunction was

26  already obtained.  It was a pleading drafted by the lawyer in Mauritius.").

27          Trial counsel's performance was reasonable at both the trial and sentencing stages.

28  At trial, he argued that the Mauritian injunction was lawfully obtained and repeatedly

emphasized that it was not intended to impede Mr. Law's ability to testify. CR Doc. 439, at 8-9, 10, 12-13, 25.  Trial counsel also submitted a supplemental memorandum before sentencing, which reiterated that an obstruction of justice enhancement should not be imposed because the Mauritian injunction was lawfully obtained from a foreign jurisdiction and not intended to prevent Mr. Law from testifying.  CR Doc. 355, at 2-4. Trial counsel further argued that the enhancement should not apply because the Mauritian injunction did not actually prevent Mr. Law from testifying, that the injunction merely prevented Mr. Law from disclosing confidential information that was protected under Mauritian law, and that he was unaware of any legal authority that a lawfully issued court order could form the basis for an obstruction of justice enhancement.  *Id.* at 2, 4.  Movant may have wanted his trial counsel to mention his personal involvement with the Mauritian injunction, but effective assistance need not be "infallible" assistance.  *United States v. McAdams*, 759 F.2d 1407, 1409 (9th Cir. 1985).  Here, it is clear that trial counsel acted within the wide range of professionally competent assistance.  *Strickland*, 466 U.S. at 690.

### 2.    Prejudice.

Movant argues that the Court was initially amenable to trial counsel's argument that the injunction was not specifically targeted at preventing Mr. Law from testifying, and that it was only counsel's continued deception that caused a loss of faith with the Court.  Doc. 18, at 45.  Moreover, Movant argues that the Court imposed an obstruction of justice enhancement "precisely because counsel refused to clearly and honestly declare his involvement in the lawsuit and injunction against Mr. Law in Mauritius."  *Id.* at 19. Movant relies on the following portion of the Court's sentencing order: "When Defendant Kilbride's United States counsel learned of the Mauritius lawsuit, he promptly took steps to have Defendant Kilbride eliminate the injunction against Mr. Law.  These events confirm the Court's conclusion that Defendant Kilbride initiated the lawsuit in Mauritius . . . to interfere with Laval Law's testimony."  *Id.* (quoting CR Doc. 358, at 5).

1       Movant has not shown a reasonable likelihood that the result of his sentencing

2   would have been different had the Court been aware of trial counsel's alleged

3   involvement in obtaining the Mauritian injunction.  In the same order referenced by

4   Movant, the Court explained its reasons for concluding that the injunction was a tactical

5   maneuver for the purpose of interfering with Mr. Law's testimony.  *See* CR Doc. 358,

6   at 5.  Movant took no action when the government obtained documents from Ganymede

7   and provided these documents to Movant during the course of discovery.  *Id.*  During

8   May 2007, the government arranged for Mr. Law to travel to the United States and testify

9   against Movant and his codefendants at trial; this information was disclosed to Movant

10  before trial, and yet he still took no action in the Mauritius courts.  *Id.*  It was not until

11  June 8, 2007, after trial began and only days before Mr. Law was to testify, that Movant

12  initiated legal action in Mauritius concerning Mr. Law's anticipated testimony in this

13  Court.  *Id.*  Even if trial counsel had revealed his communications with Movant's counsel

14  in Mauritius, the Court cannot conclude that there is a reasonable probability that the

15  obstruction of justice enhancement would not have applied.  The fact remains that the

16  injunction was sought on Movant's behalf through his counsel, and that Movant

17  ultimately was responsible for the injunction.

18  **IV.   Conclusion.**

19      Counsel's performance "falls within the wide range of reasonable professional

20  assistance," *Strickland*, 466 U.S. at 689, and Movant has not shown that the result at trial

21  would have been different had counsel challenged the community standards instruction

22  for obscenity or disclosed his communications with Mauritius counsel.  The Court will

23  accept the R&R on Movant's ineffective assistance of counsel claims.

24      The R&R also recommended denying a certificate of appealability ("COA") and

25  leave to appeal *in forma pauperis* because "Movant has not made a substantial showing

26  of the denial of a constitutional right."  Doc. 17, at 19.  Movant has failed to establish that

27  a COA and leave to appeal *in forma pauperis* are warranted, and the Court therefore

28  adopts these recommendations.  The Court also concludes that Movant has been

sufficiently able to set forth his arguments, and that appointment of counsel is not warranted.

**IT IS ORDERED:**

1.      The factual findings and conclusions in Judge Anderson's R&R (Doc. 17) are **accepted**.

2.      Jeffrey A. Kilbride's petition to vacate, set aside, or correct sentence (Doc. 5) is **denied**.

3.      A certificate of appealability and leave to proceed *in forma pauperis* on appeal are **denied** as stated above.

4.      The Clerk shall terminate this action.

Dated this 28th day of June, 2012.

_____

David G. Campbell
United States District Judge